**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CPS ENERGY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civ. Action No. 5:21-cv-395-JKP |
| | § | |
| **SEQUENT ENERGY** | § | |
| **MANAGEMENT, L.P.,** | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S ORIGINAL ANSWER AND COUNTERCLAIM[1]**

Defendant Sequent Energy Management, L.P. ("**Sequent**") files this, its Original Answer and Counterclaim, and respectfully shows as follows:

**DEFENDANT'S ORIGINAL ANSWER**

1. Sequent states that the allegations set forth in the unnumbered Introduction section of Plaintiff CPS Energy's lawsuit summarize the background relating to CPS's claims. Responding further, Sequent states that such claims speak for themselves and denies that CPS's claims have any merit. Responding further, Sequent specifically denies CPS's allegations and characterizations that "normal market conditions collapsed"; that natural gas prices charged by Sequent were "unlawful and unconscionable price gouging"; "profiteering"; or an "unlawful windfall." Responding further, Sequent denies that CPS has paid the lawful price for its natural gas purchases from Sequent during February 2021 or that the Texas Deceptive Trade Practices Act is applicable to the parties' transactions. Sequent further denies CPS's assertion that the price of

---

[1] Prior to filing this responsive pleading, Defendant filed a Motion to Dismiss with respect to Plaintiff's sole affirmative claim pursuant to Fed. R. Civ. P. 12(b)(6).

"$38.83/MMBtu," "represents the outer reaches of any commercially justified price for natural gas."

2. Sequent states that no response is required to Paragraph 1 because it is not a factual or legal allegation. Responding further, Sequent states that the Federal Rules of Civil Procedure and this Court's Scheduling Order will govern discovery in this matter.

3. Sequent denies the allegations in Paragraph 2. Responding further, Sequent states that CPS does not seek and has not pled for equitable relief or injunctive relief. Responding further, Sequent states that CPS has no contractual basis for the recovery of attorneys' fees.

4. Sequent is without sufficient knowledge or information sufficient to admit or deny the claims stated in Paragraph 3.

5. Sequent admits the allegations in Paragraph 4.

6. The allegations set forth in Paragraph 5 contain jurisdiction allegations that do not require an admission or denial. To the extent a response is required, Sequent states that this Court has jurisdiction over the matters presented herein.

7. The allegations set forth in Paragraph 6 contain venue allegations that do not require an admission or denial. To the extent a response is required, Sequent admits venue is proper in the Western District of Texas.

8. Sequent is without sufficient knowledge or information sufficient to admit or deny the claims stated in Paragraph 7.

9. Sequent admits the allegations in Paragraph 8.

10. Sequent denies the allegations in Paragraph 9.

11. Sequent admits the allegations in Paragraph 10.

12. Sequent admits the allegations in Paragraph 11, but denies that CPS can avail itself of Section 7.4 of the Contract. Responding further, Sequent denies that CPS invoked Section 7.4 in "good faith."

13. Sequent admits the allegations in the first two sentences of Paragraph 12. Sequent denies that the Contract contemplates CPS's right to dispute any amounts under the terms of the Parties' February 2021 transactions.

14. Sequent admits the allegations in Paragraph 13. Sequent denies that the 5,133% swing in its pricing is a material fact.

15. Sequent admits the factual statements in Paragraph 14 are correct, but denies that Sequent invoiced CPS above the "Unlawful Price Threshold." Responding further, Sequent states that CPS's position under the Contract is legally incorrect and denies that CPS is legally justified in withholding payment from Sequent on the Invoice.

16. Sequent denies the first sentence of Paragraph 15. Sequent is without sufficient knowledge or information sufficient to admit or deny the remaining allegations stated in paragraph 15.

17. Sequent is without sufficient knowledge or information sufficient to admit or deny the claims stated in paragraph 16. Responding further, Sequent denies that CPS was legally justified in withholding payment from Sequent. Sequent further denies that CPS has articulated a rational or legal basis for paying $38.83/MMBtu for natural gas purchased during the February State Declared Disaster.

18. Sequent denies the allegations in Paragraph 17.

19. Sequent denies that the statement in the first sentence in Paragraph 18 has any application to this dispute. Responding further, Sequent denies that the Texas DTPA is applicable

3

to this lawsuit. Sequent further denies that CPS has pled a claim for relief under the provisions of the Texas DTPA.

20. Sequent is without sufficient knowledge or information sufficient to admit or deny the claims stated in paragraph 19.

21. Sequent denies the allegations in Paragraph 20 to the extent that it avers that the transactions between Sequent and CPS were "unconscionable" or otherwise unenforceable.

22. Sequent denies the allegations in Paragraph 21.

23. Sequent states that no response is required to Paragraph 22 because it is not a factual or legal allegation.  Responding further, Sequent denies that the factual allegations are sufficient to state a claim for relief.

24. Sequent denies the allegations in Paragraph 23.  Responding further, Sequent states that it has affirmatively and expressly rejected CPS's offer that its partial payment constitutes full satisfaction of the Invoice. Responding further, Sequent denies that its prices charged were "unconscionable and unlawful prices" in any respect.

25. Sequent denies that CPS is entitled to the relief sought in Paragraph 24.

26. Sequent denies that all conditions precedent to CPS's claim for relief have been performed or have occurred as alleged in Paragraph 25.

27. Sequent denies that CPS is entitled to a trial by jury as alleged in Paragraph 26 because its claim for unconscionability is a matter of law for a judicial determination.

28. Sequent denies that CPS is entitled to the relief sought in Paragraph 27.

## DEFENDANT'S AFFIRMATIVE DEFENSES

29. CPS's claims are barred, in whole or in part, because unconscionability may not form the basis for affirmative relief as a matter of law.

30. CPS's claims are barred, in whole or in part, by unclean hands, waiver and/or estoppel, failure to mitigate, and unjust enrichment.

31. CPS's claims are barred, in whole or in part, by applicable contracts.

32. CPS's claims are barred, in whole or in part, by prior material breach.

33. CPS's claims are barred, in whole or in part, by misrepresentation.

## DEFENDANT'S COUNTERCLAIM

### Preliminary Statement

34. This lawsuit arises from the effects of Winter Storm Uri on natural gas prices in February 2021. Plaintiff CPS Energy ("**CPS**") agreed to purchase, and Sequent Energy Management, L.P. ("**Sequent**") agreed to supply, natural gas to CPS. The parties negotiated agreements for two natural gas transactions. Sequent tendered full performance by delivering the natural gas as promised. CPS has failed to pay the full amounts due and owing under the terms of Parties' agreement despite Sequent's payment demands.

35. CPS has not—and does not—dispute the quality, fitness, merchantability, or timing of the natural gas that Sequent successfully delivered. Indeed, CPS even acknowledges the exact amounts owed to Sequent under the terms of the parties' agreement. Instead, CPS claims that the bargain that it struck with Sequent was "unconscionable" and should be wholly refashioned by this Court to reduce CPS's liability to Sequent.

36. Texas law does not countenance CPS's position. As a sophisticated party, CPS was familiar with the natural gas market, the risks in that market, and the various strategies of mitigating such risks. Texas law will not disturb an unambiguous agreement between commercially sophisticated parties, and this dispute presents no exception to the rule. Sequent

therefore asserts a counterclaim for breach of contract to enforce the terms of the Parties' agreement.

## Parties

37. Plaintiff CPS Energy is a municipally-owned electric and gas utility owned by the City of San Antonio. CPS Energy maintains its corporate headquarters at 500 McCullough Avenue, San Antonio, Bexar County, Texas.

38. Defendant Sequent Energy Management, L.P. is a limited partnership conducting business in Texas with its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.[2]

## Factual Background

**A.    Background on the Transactions in Dispute.**

39. On April 1, 2011, Sequent and CPS entered into a Base Contract for Sale and Purchase of Natural Gas ("Base Contract"). The Base Contract provides for the terms and conditions of the parties transactions.[3] The economic terms of the parties' trades are memorialized in "Transaction Confirmations" or "Deal Summaries" which reflect the purchase price, quantity, and delivery date for the gas at issue.

40. The price of natural gas was deregulated by Congress in the early 1980s under the Natural Gas Policy Act. *See* 15 U.S.C. § 3301 *et seq.* No governmental or industry regulatory

---

[2] As explained in its Notice of Removal, Sequent is a citizen of the State of Georgia for purposes of diversity jurisdiction. *See* Dkt. 1, ¶ 9.

[3] This is a standard contract developed by the North American Energy Standards Board and is widely used in the gas industry. A NAESB contract consists of a base contract with general terms and conditions, often supplemented with negotiated special provisions, which provides a framework for transactions between the parties.

body sets or controls natural gas prices. Instead, the price of natural gas is determined by bids by buyers and sellers in an open marketplace. The price for natural gas often varies between natural gas trading hubs, and is tracked on a "gas-day" basis by industry trade publications. Supply and demand can fluctuate significantly for natural gas based on weather events and other market forces. Parties can guard against price fluctuations by entering long term pricing agreements or by using "hedges" or other derivative contracts to mitigate the financial impacts of any price spikes.

41. Although Sequent and CPS had a Base Contract, the parties did not have a long-term supply agreement in place. Instead, at issue here are two transactions in which CPS purchased natural gas from Sequent at fixed prices—meaning that at the point in time when CPS entered into the transactions it was fully aware of how much gas it was buying and how much the gas would cost. The pricing terms were completely transparent and fixed. CPS now refuses to honor the plain terms of the Parties' transactions.

**B.     Transaction No. 1: CPS purchases gas from Sequent on the ICE-NGX Exchange.**

42. In the first transaction, CPS purchased gas from Sequent on the ICE-NGX Exchange.[4] ("Transaction No. 1") In Transaction No. 1, CPS agreed to purchase 40,000 MMBtus of natural gas from Sequent to be delivered between February 13–16, 2021 at a fixed price of $135/MMBtu (the total amount actually delivered was 38,213 MMBtus). *See* Plf. Orig. Pet. ¶ 14. The natural gas purchased in Transaction No. 1 was delivered to CPS. CPS has not made any allegations in its Original Petition disputing the quality, fitness, merchantability, or timing of the natural gas delivered under Transaction No. 1 in any respect.

---

[4]   The ICE-NGX Exchange is a Canada-based electronic trading platform for natural gas in North America. It operates as a clearinghouse for natural gas trades, much like a stock exchange does for equity trading. *More information available at* www.theice.com/ngx/overview (last accessed April 23, 2021).

7

43.     Under the terms of the Base Contract and the transaction confirmation, the cost to CPS for Transaction No. 1 was the amount of $5,158,755.00.

**C.      Transaction No. 2: CPS purchases gas from Sequent on the ICE-NGX Exchange.**

44.     The second transaction was also conducted through the ICE-NGX Exchange. The parties negotiated an agreed price of $45/MMBtu for 10,000/MMBtus ("Transaction No. 2). The natural gas purchased in Transaction No. 2 was delivered to CPS. CPS has not made any allegations in its Original Petition disputing the quality, fitness, merchantability, or timing of the natural gas delivered under Transaction No. 2 in any respect.

45.     Under the terms of the Base Contract and the transaction confirmation, the cost to CPS for Transaction No. 2 was the amount of $450,000.00.

**D.      CPS Refuses to Pay Sequent the full amounts for Transaction Nos. 1 and 2.**

46.     On March 11, 2021, Sequent invoiced CPS for the amount of $5,962,255.00, representing the amounts for Transaction Nos. 1 and 2 and several others not at issue in this lawsuit. Under the terms of the Base Contract, CPS's full payment on the invoice was due on March 25, 2021.

47.     By letter dated March 22, 2021, CPS remitted partial payment of $2,225,610.79, leaving a balance of $3,736,644.21 due and owing to Sequent. In its letter, CPS claimed that it was only paying the amount of $38.83/MMBtu for the natural gas purchased in Transaction Nos. 1 and 2. CPS's letter offered no explanation as to why that amount was proper or how that amount was calculated. The letter contained no documentation supporting this calculation, which the Base Contract requires to substantiate partial payment.

48. The March 22 CPS letter also enclosed a lawsuit (not file-stamped) that CPS stated that it was going to file against Sequent unless Sequent accepted the partial payment in full and complete satisfaction of the amounts owed under the invoice.

49. Sequent responded on March 23 rejecting CPS's claim that partial payment was acceptable. Sequent sent an additional demand letter for payment to CPS dated April 8, 2021 demanding full payment of the invoice. To date, CPS has failed to remit payment. Sequent demands payment in full in the amount of $5,962,255.00 plus accrued interest under the terms of the parties' agreement.[5]

## Cause of Action – Breach of Contract

50. Sequent incorporates the preceding paragraphs by reference.

51. Sequent and CPS have a valid, binding agreement, consisting of the Base Contract and the Deal Summaries reflecting the terms of the transactions. Under the terms of the parties' binding agreement, Sequent and CPS entered into Transaction Nos. 1 and 2 in which Sequent agreed to deliver, and CPS agreed to purchase, natural gas at fixed pricing terms.

52. Sequent fully performed its obligations and has delivered natural gas to CPS under the terms of the parties' agreement. There is no dispute with respect to the quality, fitness, merchantability, or timing of the delivered natural gas.

53. Sequent invoiced CPS in the ordinary course of business for the amounts due and owing for Transaction Nos. 1 and 2.

---

[5] Sequent has attempted to return the partial payment to CPS to repudiate any contention that acceptance of the partial payment operated as any form of accord and satisfaction. However, Sequent needed a W-9 to return the payment to CPS, but to date CPS has not responded to Sequent's inquiries requesting CPS's W-9.

54. CPS's obligation to tender payment was due on or before March 25, 2021. However, CPS has failed to perform its payment obligation, despite demands having been made upon to tender full payment. CPS has made only a partial payment of $2,225,610.79, and has withheld the amount of $3,736,644.21. Despite Sequent's demands for full payment, CPS has repudiated its obligation to make full payment, thereby breaching the parties' agreement.

55. Sequent has been injured by CPS's breach of the parties' agreement.

56. All conditions precedent to this claim have occurred and/or have been waived.

### Attorneys' Fees

57. Sequent requests an award of its reasonable and necessary attorneys' fees pursuant to Texas Civil Practices and Remedies Code Section 38.001 *et seq*. All conditions precedent to the recovery of attorneys' fees have been satisfied and/or waived, including presentment.

58. To the extent that it prevails against CPS's claim for Declaratory Relief, Sequent seeks to recover its costs and reasonable and necessary attorneys' fees as are equitable and just pursuant to Texas Civil Practices and Remedies Code Section 37.009.

### Conclusion

59. WHEREFORE, having fully responded to the averments and allegations set forth in Plaintiff's Petition, Defendant Sequent Energy Management, L.P. respectfully requests that the Court:

    a. deny the relief requested by CPS Energy;

    b. award Sequent actual damages;

    c. award Sequent its attorneys' fees and costs of court;

    d. award Sequent pre- and post-judgment interest;

    e. award Sequent all other and further relief to which it is entitled.

Dated: April 27, 2021.

        Respectfully Submitted,

        **EVERSHEDS SUTHERLAND (US) LLP**

        By: <u>*/s/Garrett A. Gibson*</u>
            Garrett A. Gibson
            Texas Bar No. 24069024
            garrettgibson@eversheds-sutherland.com
            1001 Fannin, Suite 3700
            Houston, Texas 77002
            Telephone: (713) 470-6100
            Facsimile: (713) 654-1301

            Jack W. Massey
            *Admitted Pro Hac Vice*
            Texas Bar No. 24051004
            JackMassey@eversheds-sutherland.com
            1001 Fannin, Suite 3700
            Houston, Texas 77002
            Telephone: (713) 470-6100
            Facsimile: (713) 654-1301

        *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on April 27, 2021, the foregoing instrument was served upon the following via electronic service through the Court's ECF/PACER system.

Lauren A. Valkenaar
lvalkenaar@chasnoffstribling.com

Blake W. Stribling
bstribling@chasnoffstribling.com

Barry A. Chasnoff
bchasnoff@chasnoffstribling.com

Adam Kiehne
akiehne@chasnoffstribling.com

Adrianna Jimenez
ajimenez@chasnoffstribling.com

**CHASNOFF | STRIBLING, LLP**
1020 N.E. Loop 410, Suite 150
San Antonio, Texas 78209
Telephone: 210-469-4155
Facsimile: 210-855-9898

*Attorneys for Plaintiff*

                                                      */s/Garrett A. Gibson*
                                                      Garrett A. Gibson